UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                       Case No. 2:24-cr-20633-JJCG-KGA
                                       Hon. Jonathan J.C. Grey

v.

ISAAC SISSEL,

     Defendant.
_____

## DEFENDANT ISAAC SISSEL'S SENTENCING MEMORANDUM

NOW COMES Defendant, Isaac Sissel, by and through his counsel, John M. McManus, Esq. of Vandeveer Garzia, P.C. by and for his Sentencing Memorandum sets forth the following for this Honorable Court's consideration:

### I.   Introduction/Procedural History

Mr. Sissel was a resident of the Ann Arbor, Michigan area through early November of 2024, after living in various locales throughout the United States following his departure from his family home at the age of eighteen. He relished posting on social media sites including Reddit. In November of 2024, he sent an anonymous tip to the FBI threat center in West Virginia, from Ann Arbor, Michigan. That tip contained words that could be construed as a threat and were perceived as such by the agents on this case and resulted in a Complaint setting forth alleged violations of 18 U.S.C. § 875(c), that being Interstate Communication of a Threat. The Criminal Complaint was issued by the U.S. Magistrate Judge in Detroit on November 4, 2024, and resulted in Mr. Sissel's arrest.

Undersigned counsel appeared on behalf of Mr. Sissel on November 7, 2024. Mr. Sissel has been detained from that point through the date Sentencing, scheduled to occur on September 29, 2025.

On November 13, 2024, Mr. Sissel was indicted for alleged violations of 18 U.S.C. § 875(c) alleging he knowingly transmitted an interstate communication containing a threat to injure a person of another, and specifically for the purpose of issuing a threat and with knowledge that communication would be viewed as a threat. The indictment contained "special findings" claiming that his behavior amounted to a Hate Crime Motivation under United States Sentencing guidelines § 3A1.1. (A copy of the Indictment is attached hereto and labeled as Exhibit 1).

On April 1, 2025, the First Superseding Indictment was filed, setting forth the previously filed interstate communications-threats alleged violations of 18 U.S.C. § 875(c), and adding the allegation that Mr. Sissel made the "threat" with knowledge that communication would be viewed as a threat, and with recklessness that the communication would be viewed as a threat. (A copy of the First Superseding Indictment is attached hereto and labeled as Exhibit 2).

Motion practice occurred including a Motion to Compel Transfer from Livingston County to Milan Federal Detention Center, a Motion to Dismiss the Indictment. A Plea Hearing was held on April 2, 2025, which was followed by a subsequent Motion to Withdraw Guilty Plea, with the latter having been formally withdrawn prior to any hearing date having been chosen.

Following this Honorable Court's conducting of oral arguments on the Motion to Dismiss the Indictment, Mr. Sissel endorsed a Rule 11 Plea Agreement to the interstate threat charge, acknowledging the elements of the count of conviction and further acknowledging the factual basis that being set forth in paragraphs 2-3 of page 16, including the internet transmitted tip to the West Virginia FBI location. Mr. Sissel confirmed by way of his endorsement of the Rule 11 Plea Agreement that he submitted the online form in Michigan and knew that it was received in West

2

Virginia. Prior to his endorsing the Plea Agreement, Mr. Sissel had significant in-depth conversations with undersigned counsel regarding the terms of the Plea Agreement, his rights related to proceeding to trial versus entering a guilty plea, and his acknowledgment that it was this Honorable Court's obligation to determine his guideline range at the time set for sentencing. (A copy of the Rule 11 Plea Agreement is attached hereto and labeled as Exhibit 3).

Exhibit 3, pages 3-5 as part of his "acceptance of responsibility" the Plea Agreement, confirmed that Mr. Sissel would receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). The Plea Agreement continued by setting forth that if the Government learned he had engaged in any conduct inconsistent with the acceptance of responsibility "including but not limited to, making any false statements to, or withholding any information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he has pleaded guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility," the Government would be "free to argue" that he would not receive any reduction for acceptance of responsibility and free to argue that Mr. Sissel receive an enhancement for obstruction of justice. (Id, page 6).

Of significance is the language at subparagraph **C. Other Guideline Recommendations**, the Government articulated its anticipated argument that Mr. Sissel intentionally selected Christians as the object of his threat in Count 1 and that the enhancement under USSG § 3A1.1, should apply. However, that section noted that "Sissel does not agree that this enhancement applies and will so argue. The parties agree the Court will make this determination at Sentencing." (Id, page 7).

Further, and as an essential part of the Rule 11 Plea Agreement, the Government recommended that Defendant's sentence of imprisonment not exceed the bottom of the guideline range as determined by this Honorable Court. (Id, page 8). Finally, the Rule 11 Plea Agreement

3

provided at subparagraph **C. Supervised Release**, that the parties jointly recommended that this Honorable Court order a one-year term of supervised release in this matter.

As this Court is fully aware, Mr. Sissel had significant difficulties in all the locations in which he was held on the charges in this case, including Livingston County Jail, Milan Federal Detention Center, and his current detention housing, St. Clair County Jail. Mr. Sissel was the subject of multiple reports by jail staff of his making threats of physical violence using caustic words, phrases, and intimation of violence of the most difficult and unsettling nature. He was placed into individual housing, whether under suicide watch, Special Housing Unit (SHU) or solitary confinement, as a result of the behavior he was exhibiting throughout stays at each of the facilities referenced above. This conduct was consistent but has since subsided given the sense of quiet resignation to the upcoming Sentencing as anticipated, and within the specific terms set forth within the Rule 11 Plea Agreement.

As of the drafting of this Sentencing Memorandum, Defendant has had no additional improper outbursts over the past month. As this Court is fully aware, Mr. Sissel's history is fraught with questionable decision making wherein verbal threats were made, all with the ultimate object of obtaining compliance with his demands for treatment in the nature of housing, management at the detention facilities, and having his desires met in society in general.

During the various motion hearings, this Court has been met with arguments from undersigned counsel that Mr. Sissel's behavior was not intended as actual threats, but mere hyperbole, and/or social media trolling and nothing more. Notwithstanding that argument having been advanced in various ways before this Honorable Court, Mr. Sissel did admit responsibility for the tip to the FBI that formed the basis for the interstate count and acknowledged his wrongdoing in that regard. Based upon his behaviors in advance of the hearing on his Motion to Dismiss the Indictment, as well as the allegations of staff at Livingston County Jail, Mr. Sissel was

4

evaluated by recently deceased Dr. Jeffery Wendt for purposes of a mental competency examination. Dr. Wendt proceeded to the Livingston County Jail for purposes of conducting the evaluation and noted Mr. Sissel to be a 26-year-old man charged with interstate communication threats. Dr. Wendt confirmed being referred for a "psychological evaluation to address his current adjudicative competency." A copy of this report has been previously provided to this Honorable Court and discussed in open court during a Competency Hearing, with the outcome being that Mr. Sissel was competent.

Mr. Sissel's manipulative style was confirmed by Dr. Wendt when Mr. Sissel stated to him that, "I use false suicidal allegations to get moved around in jail. Or, in California, if it's a misdemeanor case, you say suicide. So, if you play the mental health card, they give you a three day hold instead of jail." (March 17, 2025, report page 2, first full paragraph). Dr. Wendt found that the only "significantly elevated scale" in Mr. Sissel's profile measured antisocial personality traits with the three subscales of that diagnosis in the clinically significant range. Dr. Wendt summarized his evaluation and indicated "It is my opinion Mr. Sissel has antisocial personality disorder without the presence of any mental illness." (Id, page 5).

## II.     Presentence Investigation Report (S)

On July 9, 2025, Ms. Alima Patterson of the United States Probation Office issued her initial Presentence Investigation Report in which outlined the operative dates from Defendant's initial arrest through the April 2, 2025, plea to the Rule 11 Plea Agreement referenced above. The recitation of paragraphs 18 through 24 are temporally accurate, and contain the November 4, 2024, paraphrasing the interview of Mr. Sissel with agents, noting the use of the words "conservative Christians" in their reported dialogue with him. The initial offense level computation was noted to be a base offense level of 12, an enhancement pursuant to USSG § 3A1.1(a) for the selection of alleged victims based on perceived religion, leading to a total adjusted offense level of 15. (A copy

of the Initial Presentence Investigation Report is attached hereto and labeled as Exhibit 4. Id, pages 11 and 12).

The Initial Presentence Investigation Report provided Mr. Sissel with a two-level reduction for his acceptance of responsibility pursuant to United States Sentencing Guidelines § 3E1.1(a) resulting in a Total Offense Level of 13.

Next, the Initial Presentence Investigation Report calculated Defendant's criminal history starting at paragraph 29 relating to an October 3, 2017 – when Mr. Sissel was 18 years old – charge of misdemeanor theft, accessing same as a one-point addition to the ultimately computed criminal history calculation. The report then calculates an additional point for an April 9, 2021, misdemeanor hit and run damage case, two points for an April 13, 2021, misdemeanor stalking case, a June 27, 2021, felony attempt to elude case, a one-point addition for a September 24, 2021, misdemeanor harassment case, all while Mr. Sissel was 22 years old. The criminal history calculation section continues by delineating a February 1, 2022, one-point assessment for a felony criminal mischief case while Mr. Sissel was still 22 years old, and finally, an April 6, 2022, misdemeanor harassment case with one-point addition for a crime committed while Mr. Sissel was 23 years old. Based on the criminal history computation of the Presentence Report establish a criminal history score of 6, placing Mr. Sissel in criminal history category III. (Id, pages 9-13).

It should be noted that subsequent to Mr. Sissel not advancing objections to the initial Presentence Investigation Report, the Government filed its objections predicated upon Mr. Sissel's above-referenced behavioral improprieties inside Livingston County Jail, Milan Federal Detention Center, and St. Clair County Jail. The Government alleged that it was released from its obligation to offer Mr. Sissel the two-level reduction for acceptance of responsibility based upon the Government's interpretation of misconduct resulting in new criminal activity and/or in some way, as evidence of his failure to accept responsibility for the interstate threat to which he pled guilty.

6

Based upon the Government's objections, the U.S. Pretrial Services Officer issued an Addendum Report wherein paragraphs 28 and 29 were revised to reflect that Defendant had "not demonstrated acceptance of responsibility," and paragraph 30 was revised to reflect no reduction of points for acceptance of responsibility, paragraph 39 was revised to reflect the updated total offense level of 15, paragraph 42 had been revised to reflect the sentence imposed and updated guideline citation criminal history points of 2, reflecting a total criminal history points of 8, moving Mr. Sissel from criminal history category III to criminal history category IV.

Additionally, revisions to the Report at paragraph 90, reflect the guideline imprisonment range increase to 30-37, and paragraph 120 was revised to reflect the Jury Sentencing Information according to the updated guideline range. (A copy of the Addendum and revisions to the Presentence Investigation Report are attached hereto and labeled as Exhibit 5).

Defendant Isaac Sissel hereby objects to the Addendum Presentence Investigation Report adopting the Government's position that Mr. Sissel has not demonstrated acceptance of responsibility. Further, Mr., Sissel, through counsel, objects to the Government's Addendum Presentence Investigation Report incorporation of the Government's stated refusal to award the reduction for acceptance of responsibility and rather believes the total offense level should be 13, only if this Court finds the hate crime enhancement applies, as opposed to 15 as calculated.

As to the guideline citation of criminal history calculations, it appears as though the initial Presentence Investigation Report was in error, and that error was corrected by way of the Addendum by adding an additional two points, raising Mr. Sissel to criminal history category IV. Mr. Sissel asserts that paragraph 90 (formerly 89) of the Addendum should calculate (again, only if the hate crime enhancement is selected to apply) a total offense level of 13 and a total criminal history category of IV, resulting in a guideline imprisonment range of 24-30 months, not 30-37

7

months. Otherwise, Mr. Sissel believes his offense level should be 12, minus 2 for acceptance of responsibility, for a total of 10.

### III.    Law

As this Court is fully aware of the advisory nature of the guidelines, a rote presentation of Supreme Court case law establishing that fact will not be advanced here.  This Court's ultimate sentence needs to meet both procedural and substantive reasonableness.  Courts are to consider the 18 U.S.C. 3553(a) factors to begin the analysis of the guidelines and to remain cognizant of them throughout the sentencing process.  Procedural reasonableness requires a calculation of the guideline range.  Once a guideline calculation is made, the sentencing judge is then tasked with turning to substantive reasonableness in its evaluation.  "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the offense and offender, and sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. 3553(a)."  United States v. Gates, for a F. 4th 463, (6th Cir. 2022); U.S. v. Thomas-Matthews, 81 F. 4th 530, (6th Cir. 2023). Gates, supra., pages 476-477, citing U.S. v. Curry, 536 F.3d 571, 573 (6th Cir. 2008).

Notwithstanding his having achieved the age of 25, and his knowledge of the impropriety of his numerous criminal actions, he began committing those crimes as a very young man. The United States Sentencing Commission has recently addressed age as a consideration for sentencing courts and amended the language of USSG 5H1.1 to reflect society's advanced understanding of the development of a young brain and its  interplay with crime at a young age.

"A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development int their mid-20s and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use lack of educational opportunities and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking

8

and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals are more susceptible to rehabilitation." (USSG 5H1.1). This Specific Offender Characteristic – Policy Statement speaks directly to Mr. Sissel and this Court's analysis herein.

IV.    **18 U.S.C. 3353(a) Factors to be Considered by Court in its Imposition of a Sentence**

- **(a)(1) The nature and circumstances of the offense and the history and characteristics of the Defendant.**

As this Court is fully aware, based upon its full involvement over the past many months, Mr. Sissel presents a complicated personality constellation for a defendant to be sentenced. He has a high level of intelligence and had success utilizing words to manipulate other people's behaviors. This may be a response to having been essentially ousted from his familial home by his mother at the age of 18 and essentially living on the streets from that point forward. Due to living under the constraints of a mother who was extremely religious and strict Christian, coupled with harsh realities of an 18-year-old boy, Mr. Sissel developed a strong rhetoric opposing conservative thought, conservative religion, and those people and entities he perceived as having or asserting authoritarian control of other people's behaviors.

While Mr. Sissel was routinely on social media and used provocative usernames, the vast majority of his social media content are re-posts in support of liberal causes. His tip to the FBI was about himself, and not some third party who was perceived to potentially be capable of undertaking an actual physically violent act against any known victims. While meeting the terms of the statue as written, and pled guilty to by Mr. Sissel in open court, he steadfastly believed he was pranking, issuing hyperbole, and/or trolling the FBI. He has subsequently come to realize that the words used were perceived as a threat by others, which supported his guilty plea before this Honorable Court. This behavior is in line with his conduct throughout his brief adulthood leading up to his arrest.

9

While extremely lengthy and consistent from the age of 18 forward (Mr. Sissel did have an arrest in 2014 at the age of 15 in Delaware and was found to be a juvenile delinquent) through the arrest in this case, Mr. Sissel was a virtual child. As will be discussed infra, USSG § 5H1.1 – Age – has been properly revisited and serves as a basis for this Court to determine the entirety of his criminal behavior, unreasonable actions, words, and non-violent deeds are as the result of a mind that was not yet formed and became a pattern of conduct as a result of his youth. This analysis supports a downward departure from whatever guidelines are determined in this case.

Without minimizing the seriousness of an interstate threat, the fear that could be instilled by an actual victim receiving a particularized threat of harm, or a group of victims who could perceive an actual threat of physical harm, that is not what occurred in this case. Quite frankly, Mr. Sissel trolled his way into a ruse and sham tip about himself. He has pled guilty because he understands the words used could be perceived as a threat, however, Mr. Sissel had no intention whatsoever of acting upon that threat, or any other subsequent threat he has made from the point of his arrest through the date of this Sentencing Memorandum. His history is a sad one, to be sure, and his punishment should reflect the nature of circumstances of the hyperbolic tip to the federal agents, as well as his established personality characteristics as evidenced by his arrest history, conviction history, and the statements of Dr. Wendt's evaluation of Mr. Sissel.

- **(a)(2)(A) To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.**

Mr. Sissel does not deny the impropriety of his tip to the federal agents wherein he articulated the possession of a powerful firearm, his hatred for the President of the United States candidate, and threatened to harm Chistian conservatives. This conduct is inappropriate and will be punished. However, Mr. Sissel disputes the amended offense level calculations, applied to the amended criminal history computation, as well as the inclusion of specific instances of further

10

hyperbolic statements as establishing he failed to accept responsibility for his outlandish trolling of the FBI. A sentence within the alternatively suggested guideline range of 15-24 months, together with a one-year supervised release, would be sufficient to meet the goals of reflecting the seriousness of his offense, promoting respect for the law, and to provide just punishment.

- **(a)(2)(B) To afford adequate deterrence from criminal conduct.**

A sentence within the 15-24 month range would afford adequate deterrence both to the general population and citizenry of the United States, as well as to Mr. Sissel. An average citizen would be severely impacted by being forced to countenance a sentence of 15 months in prison for typing words on a keyboard about a potential violent threat, that was actually about themselves. Mr. Sissel is equally impressed by the severity of jail time associated with his inappropriate, thoughtless, and pointless ruse to the FBI. The severity of his punishment, which started early November of 2024, is not lost on him. A sentence within the suggested range would serve as adequate deterrence from any future conduct by Mr. Sissel.

- **(a)(2)(C) To protect the public from further crimes of the defendant.**

Any term of incarceration this Court deems appropriate for Mr. Sissel will act to protect the public from Mr. Sissel. At Sentencing, he will suggest a punishment below any calculated range, and seek a version of non-reporting supervised release, non-drug testing supervised release, and/or full probation in lieu of a term of incarceration. Mr. Sissel's history, characteristics, and background criminal activity is singularly his own and likely bear very little resemblance to any criminal history this Honorable Court has seen previously.

Mr. Sissel has had an extremely unique life experience, has lived virtually unassisted by anyone, has at times been homeless, on the street, or looking for places to reside, rest, and care for himself that was not exposed to the outside elements. His current term of detention, coupled with whatever form of sentence this Court deems appropriate, will have an impact of retarding his desire

to continue with the actions this Court has seen, has been exemplified in the Complaint, Indictment, Superseding Indictment, complaints by jail staff, and the concerns articulated by Dr. Jeffery Wendt.

- **(a)(3) The kinds of sentences available.**

As this Court knows, the Government and Mr. Sissel disagree on the guidelines and their calculations centralized on two main issues: acceptance of responsibility (which he asserts occurred); and the hate crime element associated with USSG § 3A1.1(a). It is specifically denied that any proofs have determined beyond a reasonable doubt that Mr. Sissel intentionally selected any victim based upon their religion, other than generalized statements set forth within his FBI tip. Mr. Sissel goes so far as to suggest the base offense level of 12, as set forth within the Presentence Investigation Report at paragraph 31, on page 9, from which two levels would be subtracted for acceptance of responsibility, would leave him at an offense level of 10 with a criminal history category of IV resulting in an advisory range of 15-21 months.

Whether this Court accepts Mr. Sissel's argument, that of U.S. Probation, that of U.S. Attorney, 18 U.S.C. § 3561(c)(1) does provide that Mr. Sissel is eligible for one to no more than five years' probation because the offense is a class D felony. In order for that statutory provision to be utilized, Mr. Sissel would need to be fined, ordered to pay a restitution, or ordered into community service as a condition of probation unless extraordinary circumstances exist. Even though the guideline provisions determine that Mr. Sissel was ineligible for probation, there is a divergence between the statutory and guideline mandates and/or allowances, such that Mr. Sissel asks this Court to follow the statutory provision and to sentence him to a term of probation. Further, the parties agreed to one year of supervised release, which Mr. Sissel respectfully requests non-reporting and non-drug testing, given his unique life circumstances.

Should he be ordered to appear for supervised release at regular intervals, that would, in essence, set him up for failure given he has no resources, no vehicle, and currently no home address from which to operate, and to make trips to a U.S. Probation Office. Further, Mr. Sissel has essentially self-medicated with the use of marijuana for many years and needs to be able to utilize that State-legal, available substance to manage his mood and behavior. Again, it is respectfully requested this Honorable Court sentence Mr. Sissel to probation that is non-reporting and non-drug testing.

Mr. Sissel does not have the benefit of Letters of Support as he does not have anyone in which he could rely on to provide a character assessment to this Court. Undersigned counsel has obviously engaged with Mr. Sissel since his appointment to represent him and has seen his behaviors throughout the course of this extended time period. While his behaviors have sparked concern, debate, and seem fantastical and extremely unsavory, he has done little beyond using words in an attempt to get his way within the confinement setting. Has he used words that upset people? Yes. Has he crossed the line in using bombastic language that may cause others to be disgusted or insulted? Yes. Has he issued a federal tip against himself as a way to troll and mock others? Yes.

However, more appropriately, has Mr. Sissel acted on any of the statements of threatening conduct on any individual from October of 2024 through the date of today's sentencing? No. He is simply a person who has had very difficult life circumstances, has had no meaningful support by loved ones, or any opportunity to engage in any course of adult maturation due to his endless scuffles with the law from the age of 15 and has been unable to attend to his antisocial personality issues in any meaningful way. He is undoubtedly intellectually advanced in many ways, but seems to have spent his mental currency on the wrong areas, disciplines, and endeavors. This whole experience will indelibly imprint him with a sense of newfound enlightenment as to the difficulties

associated with selfish, self-entertainment, and purposefully offensive conduct. Everyone associated with prosecution hopes that Mr. Sissel is able to reconcile his past behavior, poor decision making with regard to the FBI tip, his paper tiger threats, and to move forward as a well-balanced and more productive member of society.

Respectfully Submitted,

By:   /s/ John M. McManus
       John M. McManus (P44102)
       **Vandeveer Garzia, PC**
       840 W. Long Lake Road, Suite 600
       Troy, MI 48098
       (248) 312-2982
       *Attorney for Defendant, Isaac Sissel*

Dated: September 23, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                              Case No. 2:24-cr-20633-JJCG-KGA
                              Hon. Jonathan J.C. Grey

v.

ISAAC SISSEL,

     Defendant.
_____

## PROOF OF SERVICE

Mackenzie Miller, being fully sworn, deposes and states that she is employed by Vandeveer Garzia, P.C., and that on the 23rd day of September 2025, filed Defendant Isaac Sissel's Sentencing Memorandum on behalf of Attorney John M. McManus, via electronic filing, to all counsel of record.

/s/ Mackenzie Miller